UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
AMERIPRISE FINANCIAL SERVICES, INC.,

                Petitioner,
             Cross-Respondent,        **MEMORANDUM & ORDER**

        - against -                            19 Civ. 7812 (NRB)

JEFFREY R. SILVERMAN,

                Respondent,
             Cross-Petitioner.
--------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Ameriprise Financial Services, Inc. ("Ameriprise") petitions to confirm an arbitral award it obtained against Jeffrey R. Silverman ("Silverman") in an arbitration before the Financial Industry Regulatory Authority ("FINRA"). Silverman cross-petitions to vacate the award. The Court confirms the award for the reasons stated herein.

**BACKGROUND**

Ameriprise hired Silverman in January 2016. On January 25, 2016, Silverman executed a Transition Promissory Note (the "Note") pursuant to which Ameriprise loaned him $280,190 at an interest rate of 2.05% compounded annually. Declaration of Christopher D. Warren ("Warren Decl."), Ex. B ("TPN") ¶ 1. The Note provided that "[i]f [Silverman's] employment with Ameriprise terminates for any reason including . . . resignation . . . the unpaid balance of

1

the principal sum, plus accrued interest, shall be due and payable as of the date of [the resignation]." TPN ¶ 2. Moreover, "[i]n the event of a default by [Silverman] on this loan, or the obligations described herein, the interest rate on unpaid principle [sic] and interest shall convert to the maximum rate allowable by applicable law for both the post default, pre-judgment period, as well as any period post-judgment as allowable by law." TPN ¶ 1.

The Note also provided that "any dispute arising between [Silverman and Ameriprise] (including but not limited to [Silverman's] default on the loan) shall be subject to arbitration pursuant to the FINRA Code of Arbitration Procedure for Industry Disputes." TPN ¶ 6. Additionally, it contained a fee-shifting clause stating that Silverman "agrees to pay all costs of collection, whether or not suit or action is filed hereon, in the event that payment is not made in accordance with the provisions of this Note. The costs of collection shall include but are not limited to reasonable attorney's fees for collection efforts before commencing any legal proceeding, in arbitration, at trial, and on appeal. If . . . arbitration is commenced, the amount of such reasonable attorney's fees shall be fixed by the arbitrator . . . ." TPN ¶ 9. New York law governed the Note. TPN ¶ 10.

Silverman resigned from Ameriprise in August 2017. On August 25, 2017, Ameriprise commenced an arbitration against Silverman by

filing a statement of claim for breach of the Note and unjust enrichment with FINRA's Office of Dispute Resolution. Declaration of Scott. A. La Porta ("La Porta Decl."), Ex. 2 at 1.[1] Ameriprise sought, among other things, $275,471.40 in compensatory damages, attorneys' fees and costs, and pre- and post-award interest. La Porta Decl., Ex. 2 at 2.

On October 13, 2017, Silverman filed with FINRA a statement of answer and counterclaim, in which he asserted counterclaims for promissory fraud, fraudulent inducement, negligent misrepresentation, negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of the New York Wage Theft Prevention Act. Id., Ex. 2 at 1. He sought a declaration that the Note was unenforceable, compensatory damages of not less than $1 million, punitive damages, and attorneys' fees and costs, among other relief. Id., Ex. 2 at 2.

Concurrent with the filing of his answer and counterclaims, Silverman executed a FINRA Submission Agreement in which he agreed to submit all of Ameriprise's claims and his counterclaims to arbitration before FINRA. Id., Ex. 1. In the Submission Agreement, Silverman agreed "to abide by and perform any award(s) rendered pursuant to [the] Submission Agreement." Id., Ex. 1.

---

[1] The arbitration was captioned Ameriprise Financial Services, Inc. v. Jeffrey R. Silverman with FINRA case number 17-02291.

3

Pursuant to FINRA's arbitration rules, the parties selected an arbitration panel of two public arbitrators, James Alexander Brown and Steven C. Kasarda, and one nonpublic arbitrator, Mitchell Jay Bayer. Id., Ex. 2 at 6. Two pre-hearing conferences were held on January 8 and November 1, 2018, after which eight hearings were held from November 6 through 9, 2018. Id., Ex. 2 at 4. Additional hearings were scheduled for January 14 through 16, 2019, but they were postponed at Silverman's request. Id., Ex. 2 at 4. Another pre-hearing conference was then held on February 8, 2019, after which another eight hearings were held from June 25 through June 28, 2019. Id., Ex. 2 at 4. During the proceedings, each party filed a discovery motion. Id., Ex. 2 at 4. Of the 16 hearings, two concerned the prosecution of Ameriprise's claims against Silverman and 14 concerned the prosecution of Silverman's counterclaims against Ameriprise. Warren Decl. ¶ 12. Ameriprise engaged an expert witness in order to defend against Silverman's counterclaims. Supplemental Declaration of Christopher D. Warren ¶ 16. At the close of the hearings, Ameriprise requested an award of $631,256.66 inclusive of attorneys' fees, costs, and pre-award interest, and requested post-award interest of $120.5486 per day beginning June 24, 2019. La Porta Decl., Ex. 2 at 2.

On August 6, 2019, the arbitration panel unanimously entered an award in favor of Ameriprise (the "Award"). Id., Ex. 2 at 2. The Award granted Ameriprise $358,891.03 in compensatory damages,

4

interest on those damages at 9% per annum beginning 30 days after the panel's issuance of the Award, $211,821.30 "in attorneys' fees pursuant to the terms of the promissory note," and $60,544.33 "in costs," for a total of $631,256.66, or the amount that Ameriprise had requested at the close of the hearings. Id., Ex. 2 at 2-3. On August 20, 2019, Ameriprise filed a petition to confirm the Award. On October 16, 2019, Silverman cross-petitioned to vacate it.

## DISCUSSION

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the [C]ourt." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984). The Federal Arbitration Act (the "FAA") governs the confirmation and vacatur of an award rendered in a FINRA arbitration. E.g., Dishner v. Zachs, No. 16 Civ. 4191 (LGS), 2016 WL 7338418, at *1 (S.D.N.Y. Dec. 19, 2016) (collecting cases). Under the FAA, "[o]n application for an order confirming [an] arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10, concerning vacatur, and 11, concerning modification].'" Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008) (quoting 9 U.S.C. § 9).

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very

5

high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Indeed, an "arbitration decision must be confirmed if there is any basis for upholding the decision and if there is even a barely colorable justification for the outcome reached." Bear, Sterns & Co., Inc. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (internal quotation marks omitted). "The arbitrator's rationale for an award need not be explained," D.H. Blair & Co., 462 F.3d at 110, and the award should be upheld "'if the [C]ourt can discern any valid ground for it.'" NDV Inv. Co. v. APEX Clearing Corp., No. 14 Civ. 923 (RMB), 2015 WL 151043, at *2 (S.D.N.Y. Jan. 8, 2015) (quoting Freedom Investors Corp. v. Hadath, No. 11 Civ. 5975, 2012 WL 383944, at *4 (S.D.N.Y. Feb. 7, 2012)). Accordingly, the Court's review "is highly deferential to the arbitrators, and relief on such a claim is therefore rare." STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (internal quotation marks omitted).

Silverman offers two bases on which he contends that the Court should vacate the Award: § 10(a)(4) of the FAA and manifest disregard of the Note's fee-shifting clause. The Court addresses each in turn.

### 1. Section 10(a)(4)

Section 10(a)(4) of the FAA provides that the Court "may make an order vacating the award . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final,

and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit "has 'consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4).'" T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 342 (2d Cir. 2010) (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003)). Thus, "[t]he focus of [the Court's] inquiry in challenges to an arbitration award under section 10(a)(4) is whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011) (internal quotation marks omitted and emphasis in original). "In other words, once [the Court] determine[s] that the parties intended for the arbitration panel to decide a given issue, it follows that 'the arbitration panel did not exceed its authority in deciding that issue – irrespective of whether it decided the issue correctly.'" T.Co Metals, LLC, 592 F.3d at 346 (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 101 (2d Cir. 2008)). Silverman argues that the arbitrators exceeded their authority for two reasons, neither of which is even remotely persuasive.

First, Silverman contends that the arbitrators exceeded their authority because they awarded what he believes were erroneous

7

amounts of compensatory damages, attorneys' fees, and costs.[2] However, under § 10(a)(4), "the petitioner must do more than show 'that the arbitrator committed an error – or even a serious error.'" Wells Fargo Advisors LLC v. Tucker, 373 F.Supp. 3d 418, 424 (S.D.N.Y. 2019) (internal alterations omitted) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986)). Silverman must instead establish that he and Ameriprise did not submit the determination of compensatory damages, attorneys' fees, and costs to the arbitrators. T.Co Metals, LLC, 592 F.3d at 346. However, by submitting all of their claims under the Note to arbitration, the parties did just that, as the Note empowered Ameriprise "to collect on [the] Note" and required Silverman to pay Ameriprise "all costs of collection," which "shall include but are not limited to reasonable attorney's fees for collection efforts before commencing any legal proceeding

---

[2] Silverman has failed to demonstrate that these amounts were erroneous. For example, while he maintains that the correct amount of compensatory damages was $286,176.64 based on $275,471.40 owed upon termination and a 2.05% interest rate compounded annually for the period between his termination and the Award, the Note provided that "[i]n the event of a default . . . the interest rate on unpaid principle and interest shall convert to the maximum rate allowed by applicable law for . . . the post default, pre-judgment period," TPN ¶ 1, which, under New York law, is 9%, N.Y. C.P.L.R. § 5004. While neither party supplied, nor does the Court have access to, the elements of the 358,891.03 of compensatory damages granted under the Award, $275,471.40 appreciating at 9% for the 711 days between Silverman's termination and the issuance of the Award yields an amount far closer to $358,891.03 than $286,176.64. In any event, "[t]o the extent [Silverman] disputes the arbitrator's factual findings on damages, they are beyond [the Court's] review," Bergheim v. Sirona Dental Sys., Inc., 711 Fed. App'x 43, 46 (2d Cir. 2017), because "[a]n arbitrator's factual findings are generally not open to judicial challenge, and we accept the facts as the arbitrator found them," Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 213 (2d Cir. 2002) (internal quotation marks omitted).

8

[and] in arbitration[.]" TPN ¶¶ 8-9 (emphasis added). Plainly, then, the arbitrators had authority to award the relief that they granted.

Second, Silverman argues that the arbitrators exceeded their powers in issuing the Award because two of the arbitrators allegedly violated FINRA Rule 13408(a), which provides that prior to their appointment to a panel, arbitrators "must disclose to the Director [of FINRA] any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding[.]". See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 92 (2d Cir. 2005) ("Under the FAA, an award issued by arbitrators who are not appointed in accordance with agreed-upon procedures may be vacated because the arbitrators 'exceeded their powers.'" (quoting Avis Rent A Car Sys., Inc. v. Garage Emp. Union, Local 272, 791 F.2d 22, 23 (2d Cir. 1986))). Specifically, Silverman asserts that Kasarda failed to disclose that he presided over Fayad et al. v. UBS Financial Servs. Inc., et al., FINRA case number 15-02579, and Paul v. UBS Financial Servs. Inc., FINRA case number 14-02369, and that Bayer failed to disclose that he presided over another arbitration.

But Kasarda's Arbitrator Disclosure Report disclosed that he presided over Fayad and Paul, see Supplemental Declaration of Scott A. La Porta, Ex. 1 at 2-3, and FINRA has confirmed that Bayer's

9

undisclosed arbitration was confidential because it never reached an award, see Declaration of James E. Fanto ¶¶ 8-9.  Moreover, Silverman does not offer a single reason why presiding over any of those arbitrations would constitute a "circumstance[] which might preclude [Kasarda or Bayer] from rendering an objective and impartial determination" in his arbitration with Ameriprise. FINRA Rule 13408(a); cf. Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d Cir. 2007) (explaining that an arbitrator can be disqualified for "evident partiality" under § 10(a)(2) of the FAA "only when a reasonable person, considering all of the circumstances, 'would have to conclude' that an arbitrator was partial to one side." (emphasis in original) (quoting Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984))).

Silverman has accordingly failed to demonstrate by any measure, let alone the formidable one required to vacate an arbitral award, that the arbitrators exceeded their authority in issuing the Award.

**2. Manifest Disregard of the Note's Fee-Shifting Clause**

As a "judicial gloss" on the bases set forth in 9 U.S.C. § 10 for vacatur of an arbitral award, "the [C]ourt may set aside an arbitration award if it was rendered in manifest disregard of the law." Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted).  To vacate an

award for manifest disregard of the law, the Court must consider "first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" Jock, 646 F.3d at 121 n.1 (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002)).

Courts "'apply a notion of "manifest disregard" to the terms of [an] agreement analogous to that employed in the context of manifest disregard of the law.'" Schwartz, 665 F.3d at 452 (quoting Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 25 (2d Cir. 1997)). Accordingly, "vacatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." Westerbeke, 304 F.3d at 222. Put differently, "'interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because [the Court] disagree[s] with [the] interpretation.'" Schwartz, 665 F.3d at 452 (internal alterations omitted) (quoting Yusuf Ahmed, 126 F.3d at 25).

Silverman argues that the attorneys' fees granted under the Award must be vacated for manifest disregard of the Note's fee-

11

shifting clause, which provides that Silverman is liable for Ameriprise's "reasonable attorney's fees for collection efforts . . . in arbitration." TPN ¶ 9. Silverman does not assert that the amount of attorneys' fees awarded by the arbitrators was unreasonable. Instead, he contends that the fee-shifting clause expressly and unambiguously prohibits an award of attorneys' fees that is based in any way on Ameriprise's efforts to defend against his counterclaims.

However, under New York law, which governs the terms of the Note, a contractual provision is unambiguous only if it has "'a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion.'" Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (N.Y. 1978)). Accordingly, the fee-shifting clause unambiguously means what Silverman says it does only if any contrary reading would be unreasonable. But that is plainly not the case as "collection efforts . . . in arbitration" is reasonably, if not most reasonably, read to include efforts to oppose counterclaims that seek to invalidate the Note. In fact, that is exactly what happened here, as Silverman's counterclaims sought a declaration that the Note was unenforceable. Ameriprise therefore had no choice but to defend against Silverman's counterclaims in order to collect payment under the Note.

Silverman has accordingly failed to demonstrate that the attorneys' fees granted under the Award "contradict[ed] an express and unambiguous term" of the Note, and has therefore failed to establish that the arbitrators manifestly disregarded it. Westerbeke, 304 F.3d at 222.[3]

## CONCLUSION

For the reasons stated herein, the Court grants Ameriprise's petition to confirm the Award and denies Silverman's cross-petition to vacate it. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:    New York, New York
         December 11, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[3] Silverman also contends that the Award manifestly disregarded the terms of a Promissory Note Acknowledgment Form (the "Acknowledgment") that he executed concurrently with the Note. See Warren Decl., Ex. C. However, in the Acknowledgment, Silverman merely acknowledged that he "underst[ood]" certain provisions of the Note, including its provision for fee-shifting. See id. The Acknowledgment therefore does not govern the fee-shifting agreement between Silverman and Ameriprise. Moreover, even if it did, the Award did not manifestly disregard it for the same reasons that the Award did not manifestly disregard the Note.

13